[Cite as *Kross v. Ruff*, 2017-Ohio-4276.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MARK S. KROSS, et al. | ) | CASE NO. 13 JE 0035 |
| | ) | |
| PLAINTIFFS-APPELLEES | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JERRY RUFF, Executor of the Estate of | ) | |
| JEAN YVONNE RUFF, Deceased, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Jefferson County, Ohio Case No. 12 CV 303

JUDGMENT: Reversed and Remanded.

APPEARANCES:

For Plaintiffs-Appellees:
Atty. Steven J. Shrock
Atty. Clinton G. Bailey
Critchfield, Critchfield & Johnston, Ltd.
138 E. Jackson Street
Millersburg, Ohio 44654

For Defendants-Appellants:
Atty. John Curtis Alberti
John Curtis Alberti Co., LPA
209 Portage Trail Ext. West,
Suite 100
Cuyahoga Falls, Ohio 44223

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: June 12, 2017

WAITE, J.

**{¶1}** Appellants Jean Yvonne Ruff, Frederick Simpson, Lincoln Simpson, Polly McJessy, Scott Harrah as Executor of the Estate of James Harrah, and William Harrah (collectively referred to as "Appellants") appeal a September 13, 2013 Jefferson County Common Pleas Court decision to grant summary judgment in favor of Appellees Mark S. and Joe Kross (collectively referred to as "Appellees"). Appellants argue that the trial court erroneously applied the 1989 Dormant Mineral Act ("DMA") because Appellees' complaint was filed after the effective date of the 2006 version of the Act. Pursuant to the 2006 DMA, Appellants contend that they have preserved their mineral interests by filing affidavits of preservation and through the existence of a tax parcel. Pursuant to *Corban v. Chesapeake Exploration L.L.C.,* __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __ and *Dodd v. Croskey,* 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, Appellants' arguments have merit and the judgment of the trial court is reversed and remanded only for the purpose of determining damages, if any.

<u>Factual and Procedural History</u>

**{¶2}** This appeal concerns the ownership of minerals beneath approximately 219 acres of land located in Wayne Township, Jefferson County. On May 26, 1924, Mary B. Harrah, Orville F. Harrah, Pauline Harrah, Frank W. Harrah, Parthenia Harrah, Charles W. Harrah, and Cornell Harrah conveyed the surface rights of the property to Dan and Anna Rensi. The deed included the following language: "Said grantors for themselves their heirs and assigns do hereby except and reserve one-half interest of all oil and gas in and underlying said premises." (5/26/24 Harrah

Deed.) The deed was recorded on February 27, 1942. On September 8, 1952, the surface rights were conveyed to Carl Kross, Appellees' father. The deed referred to the exception found within the Harrah Deed. Appellees obtained the surface rights through a certificate of transfer filed on February 3, 2003. While Michael Kross was also given an interest in the property, he conveyed his interest to Joe Kross.

{¶3} A tax parcel pertaining to the mineral interest was created in the name of Parthenia (Harrah) Duggar. While the parties do not know the exact date the parcel was created, it was clearly created prior to her death on February 29, 1964. The parcel remains of record. On June 30, 2011, Jefferson County filed a tax lien foreclosure on the parcel. However, the lien was dismissed after Appellants made a full payment.

{¶4} On September 14, 2011, Appellees published notice of intent to declare the Harrah interests abandoned in a local newspaper. On November 2, 2011 and November 10, 2011, Appellees filed separate affidavits of abandonment. Appellants, each living in a different state, learned of the notice through a third party. In response, on November 14, 2011, several Harrah heirs filed affidavits of preservation. The affidavits were filed by: Jean Yvonne Ruff, Fredrick Simpson on behalf of himself and his siblings Lincoln Simpson and Polly McJessy, Scott Harrah as executor of the estate of James Harrah and on behalf of the estate, and Jean Yvonne Ruff on behalf of the testamentary trust of Parthenia (Harrah) Duggar.

{¶5} On June 21, 2012, Appellees filed a declaratory judgment and quiet title complaint. On July 23, 2012, Appellants filed an answer and a counterclaim. On

May 31, 2013, Appellees filed a motion for summary judgment. Appellants responded by filing a "Reply Brief and Affidavit Contra to Plaintiff's Motion for Summary Judgment" on July 1, 2013. On September 13, 2013, the trial court granted Appellees' motion based on the 1989 DMA. This timely appeal followed.

**{¶6}** The appeal was stayed pending the Ohio Supreme Court's ruling on several related DMA cases. After the Ohio Supreme Court released Opinions on these matters, Appellants and Appellees each filed a position statement updating their respective briefs.

## Summary Judgment

**{¶7}** An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶8}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶9}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

<u>ASSIGNMENT OF ERROR NO. 1</u>

BASED ON THE SUBSEQUENT DECISION [SIC] THIS APPEALS COURT IN *DODD V. CROSKEY*, THE COURT ERRED 1N GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEES.

{¶10} Appellants present two issues within their first assignment of error. For ease of understanding, the issues will be addressed separately.

2006 DMA

{¶11} Appellants contend that the 2006 DMA controls the outcome of this matter because Appellees' complaint was filed after June 30, 2006. Pursuant to the 2006 DMA, Appellants argue that in order to declare mineral interests abandoned, two requirements must be met. First, the surface owner must comply with the notice requirements of R.C. 5301.56(E). Second, the surface owner must show that no savings event has occurred within the previous twenty years.

{¶12} While Appellees now concede that *Corban* supports Appellants' position, they continue to argue that Appellants waived any argument pertaining to the 1989 Act as they failed to raise the issue below. Because they failed to point out to the trial court the court's error with relying on the 1989 version of the Act, Appellees claim, they cannot now contest the trial court's erroneous application. Even if we find that the issue was preserved, Appellees argue that we must remand the matter because the trial court did not consider the affect of the 2006 DMA.

{¶13} Contrary to Appellees' assertion, Appellants preserved their 1989 DMA arguments. In Appellants' motion for summary judgment, they argued that the cases cited by Appellees regarding the 1989 DMA had been appealed, and were of questionable precedent. Further, in making the argument that the 2006 DMA controlled in this matter, Appellants essentially argued that the provisions in the 1989

DMA were not automatic and self-executing. Hence, this record demonstrates that Appellants preserved their arguments in this regard.

{¶14} The Ohio Supreme Court recently addressed whether the 1989 DMA applies to complaints filed after the June 30, 2006 effective date of the 2006 DMA. The Court held that:

> [A]s of June 30, 2006, any surface holder seeking to claim dormant mineral rights and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Stalder v. Bucher,* 7th Dist. No. 14 MO 0010, 2017-Ohio-725, ¶ 10, quoting *Corban, supra*, ¶ 31.

{¶15} The *Corban* Court clearly held that the provisions contained in the 1989 DMA were not self-executing and did not serve to automatically transfer ownership rights of dormant minerals by operation of law. Any attempt to declare mineral interests abandoned after June 30, 2006 must comply with the notice requirements of the 2006 DMA. *Stalder* at ¶ 10, citing *Corban* at ¶ 28. Appellees' complaint was filed on June 21, 2012. Pursuant to *Corban*, the trial court erroneously conducted a 1989 DMA analysis.

<u>Affidavit of Preservation</u>

**{¶16}** Appellants contend that they timely filed affidavits to preserve their interests pursuant to R.C. 5301.56(C). While the affidavits were technically filed on the sixty-first day, Appellants urge that the trial court properly found that the filing was timely, because the sixtieth day was a Sunday. As the affidavits were timely filed and satisfied R.C. 5301.52, Appellants contend that they preserved their interests pursuant to *Dodd, supra*.

**{¶17}** Appellees now concede that they cannot succeed under a 2006 DMA review. While maintaining their argument that Appellants waived application of the 2006 DMA, Appellees admit that, pursuant to *Dodd,* this record shows that Appellants have preserved their interests if the 2006 DMA applies.

**{¶18}** Although the trial court relied on the 1989 DMA in its ruling in this matter, the trial court alternatively considered and noted certain facts of record as they relate to the 2006 DMA. Specifically, the court stated:

On September 14, 2011, Plaintiffs published their notice pursuant to R.C. 5301.56 seeking to reunite the outstanding one-half interest in the oil and gas with the other half interest and the surface. On November 14, 2011, Defendants recorded four (4) separate preservation claims. Plaintiffs claim that Defendant's filing date is one (1) day past the sixty (60) day grace period but November 13, 2011 was a Sunday and Defendants filed on the first business day thereafter. Their filing is timely.

(9/13/13 J.E., p. 2.)

{¶19} Pursuant to *Dodd*, "a mineral-interest holder's claim to preserve filed pursuant to R.C. 5301.56(H)(1)(a) is sufficient to preclude the mineral interests from being deemed abandoned if filed within 60 days after notice of the surface owner's intent to declare those interests abandoned." *Id.* at ¶ 37. In order to preserve their interests, a mineral holder's claim to preserve must meet the requirements. The filing is in compliance with the statute if it:

> (a) States the nature of the mineral interest claimed and any recording information upon which the claim is based;

> (b) Otherwise complies with section 5301.52 of the Revised Code;

> (c) States that the holder does not intend to abandon, but instead to preserve, the holder's rights in the mineral interest.

R.C. 5301.56(C)(1).

{¶20} On November 14, 2011, Appellants filed four preservation claims. While the affidavits were filed on the sixty-first day as noted by the trial court, the sixtieth day was a Sunday and the filings were completed on the next business day. Each affidavit states the nature of the interest, includes all relevant recording information, complies with R.C. 5301.52, and states the holder's intent to preserve their interests. As such, this record reflects that Appellants have preserved their interests pursuant to R.C. 5301.56(H)(1)(a), (C)(1). Accordingly, Appellants' first assignment of error has merit and is sustained.

{¶21} Due to the trial court's erroneous reliance on the 1989 DMA, it never addressed Appellants' claim for damages. As this record shows that Appellants have preserved their interests, we remand the matter to allow the trial court to address the issue of whether Appellants are entitled to damages.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN NOT FINDING THAT THE DEFENDANTS-APPELLANTS' MINERAL INTERESTS WERE PRESERVED BY THE EXISTENCE OF A SEPARATE TAX PARCEL FOR SAID INTEREST.

{¶22} Pursuant to R.C. 5301.56(B)(3), there are six savings events which prevent a mineral interest being eligible for abandonment if the event occurred within the twenty years preceding the notice of abandonment. They are:

(a) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.

(b) There has been actual production or withdrawal of minerals by the holder from the lands, from lands covered by a lease to which the mineral interest is subject, from a mine a portion of which is located beneath the lands, or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations, under sections 1509.26 to 1509.28 of the Revised Code, in which the mineral interest is participating, provided that the instrument or order creating or providing

for the pooling or unitization of oil or gas interests has been filed or recorded in the office of the county recorder of the county in which the lands that are subject to the pooling or unitization are located.

(c) The mineral interest has been used in underground gas storage operations by the holder.

(d) A drilling or mining permit has been issued to the holder, provided that an affidavit that states the name of the permit holder, the permit number, the type of permit, and a legal description of the lands affected by the permit has been filed or recorded, in accordance with section 5301.252 of the Revised Code, in the office of the county recorder of the county in which the lands are located.

(e) A claim to preserve the mineral interest has been filed in accordance with division (C) of this section.

(f) In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

{¶23} In their original brief, Appellants argued that the trial court erroneously determined that a separate tax parcel created more than twenty years before the notice of abandonment was insufficient to constitute a savings event under R.C. 5301.56(B)(3)(f). Appellants abandoned this argument in their subsequently filed

position statement. Regardless, this issue is moot because the record reveals that Appellants preserved their interests through a claim to preserve as discussed within their first assignment of error.

## Conclusion

**{¶24}** Appellants contend that the trial court erroneously applied the 1989 DMA instead of the 2006 DMA. Pursuant to *Corban,* Appellants are correct. Appellants argue that they have preserved their mineral interests here in compliance with the 2006 Act because they have proved the existence of two savings events: filing of claims to preserve and creation of a tax parcel. This record reveals that Appellants have preserved their interests pursuant to the 2006 DMA. As such, whether their pre-existing tax parcel would also constitute a savings event is moot. Accordingly, Appellants' arguments have merit and the judgment of the trial court is reversed and remanded only for purposes of determining damages, if any.

Donofrio, J., concurs.

Robb, P.J., concurs.